**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **PATRICK GALINDO** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:20-cv-837** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, PATRICK GALINDO, Plaintiff, complaining of UNITED STATES OF AMERICA, and for cause of action will respectfully show unto the Court as follows:

**I.**
**PRELIMINARY STATEMENT**

1. This is an action asserting tort claims under the Federal Tort Claims Act (FTCA) arising from two incidents at FCI Seagoville.

2. On September 26, 2017, Plaintiff Patrick Galindo was assaulted by Lieutenant Niemritz while being escorted to the Special Housing Unit ("SHU") as Lieutenant Scereal stood by as a lookout. Niemritz slammed Galindo's head into a wall multiple times in a stairwell and then pulled Galindo's boxer shorts down and spread his buttocks as a form of degradation and intimidation.

3. On November 1, 2017, after Galindo filed a complaint regarding the September 26, 2017 assault, Galindo was assaulted by Scereal after being escorted to the SHU. Scereal excessively twisted and squeezed Galindo's arm.

4. There was no need for either use of force on Galindo, who suffered pain and injuries as a result of these incidents.

## II.
## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under the United States Constitution and under 28 U.S.C. §§ 1331, 1343, 1346, and 2671, et seq.

6.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §§ 1391(b) and 1402(b) as the actions at issue in this matter occurred in Seagoville, Texas, which is located within the Northern District of Texas.

7.      Galindo has exhausted his federal tort claim administrative remedies.

8.      Galindo filed notice of his claims with the Federal Bureau of Prisons, South Central Regional Office.

9.      Galindo's claims were acknowledged on September 25, 2019; however, no further response was given as of the filing of this Complaint, and six months have passed.

## III.
## PARTIES

10.     Plaintiff Patrick Galindo is a citizen of the United States. At the time of the two incidents that make the basis of this Complaint, Galindo was incarcerated at FCI Seagoville in Seagoville, TX. He is no longer incarcerated.

11.     Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

## IV.
## FACTS AND ALLEGATIONS

12.     On or about September 26, 2017, Plaintiff Patrick Galindo, was an inmate assigned to Federal Bureau of Prisons (BOP), FCI Seagoville in Seagoville, Texas.

13.     That day, Galindo passed out in the bathroom.

14.     When Galindo woke up, he was in handcuffs and in a wheelchair.

2

15. Galindo had no shoes, socks, or pants on when he woke up.

16. Galindo was being escorted by Lieutenants Niemritz and Screal.

17. Niemritz and Screal were employed by BOP as Lieutenants at FCI Seagoville.

18. BOP employee Niemritz was at all relevant times for this lawsuit an investigative or law enforcement officer of the United States Government within the meaning of 28 U.S.C. § 2680.

19. BOP employee Screal was at all relevant times for this lawsuit an investigative or law enforcement officer of the United States Government within the meaning of 28 U.S.C. § 2680.

20. Galindo's feet were being dragged on the concrete because Niemritz and Screal never put the footrest down on the wheelchair as they transferred him.

21. This caused pain, scraping, and scratching to Galindo's bare feet as they dragged on the concrete.

22. Niemritz and Screal were upset with Galindo due to the head count being incorrect while Galindo was passed out in the bathroom.

23. Niemritz and Screal took Galindo to the Lieutenants office, where Galindo stood up from the wheelchair fully aware of his surroundings and walked into the office.

24. Niemritz and Screal were then instructed to take Galindo to the Special Housing Unit ("SHU").

25. While Niemritz and Screal were escorting Galindo to the SHU, Screal was walking in front of him and Niemritz was walking behind him.

26. Niemritz and Screal took Galindo up a flight of stairs to get to the SHU.

27.    From the bottom of the stairs all the way to the top of the stairs, Niemritz was pulling on Galindo's boxer shorts giving Galindo a "wedgie."

28.    At the top of the stairs, Niemritz asked Galindo if he had ever been to the SHU.

29.    Galindo did not respond because he was scared.

30.    Niemritz told Galindo "welcome to Seagoville" and then slammed Galindo against wall.

31.    When this happened, Galindo was restrained in handcuffed.

32.    Niemritz then grabbed Galindo by the head and slammed Galindo's head into the wall several times.

33.    Niemritz continued grinding Galindo's head into wall, yelling "don't move."

34.    After Niemritz was done, he pulled Galindo's boxer shorts down to his ankles and spread his buttocks as a form of degradation and intimidation.

35.    Niemritz caused Galindo physical pain and mental anguish when Niemritz spread Galindo's buttocks against Galindo's will and without consent.

36.    Galindo had done nothing to justify Niemritz slamming him repeatedly into the wall.

37.    Galindo was compliant, not violating any rules, not threatening anyone, and not resisting Niemritz or Scereal.

38.    Galindo clearly did nothing to justify pulling his boxer shorts down and spreading his buttocks.

39.    Scereal was standing in front of the door at the top of the stairs looking through the window, acting as a lookout while Niemritz assaulted Galindo.

4

40. This assault caused Galindo physical injuries, pain, suffering and mental anguish.

41. As a result of this assault, Galindo's head was swollen and "ringing," his left eye was black, and he had a knot on the left side of head.

42. Following the assault, Screal opened the door and Niemritz pushed Galindo to walk through the door.

43. Neither Niemritz nor Screal pulled Galindo's boxer shorts back up.

44. Niemritz and Screal walked Galindo down to the SHU without pants or boxers on, exposing him to all the inmates.

45. Niemritz and Screal then ripped Galindo's shirt off with a cutting device in the hallway between cells.

46. Galindo was placed in his cell and was given a pair of boxer shorts.

47. The BOP employee that gave Galindo a pair of boxer shorts in the SHU was shocked at the state Galindo was in when he arrived at the SHU.

48. Galindo did not receive any other clothes until the next day.

49. Galindo was instructed to give a urine sample for testing by the same BOP employee that brought him the boxer shorts, which should be on record.

50. After Galindo was release from the SHU, he did not receive an incident report as was the policy.

51. On October 2, 2017, Galindo made a complaint to Cpt. Crittle and Psychologist Carter about the September 26 incident in the stairwell.

52. Psychologist Carter took notes and informed Galindo that there were cameras in the area of the assault.

53.    In October 2017, Galindo also spoke to Lieutenant Oterro regarding the September 26, 2017 incident on the stairs.

54.    On November 1, 2017, Galindo returned to the SHU.

55.    Upon arriving to the SHU that day, Screeal twisted and squeezed Galindo's arm causing pain and injury.

56.    Galindo had done nothing to justify Screeal twisting or squeezing his arm.

57.    Galindo was compliant, not violating any rules, not threatening anyone, and not resisting Screeal.

58.    Screeal also gave Mr. Galindo a "wedgie" just as Niemritz had done on September 26, 2017 in the stairwell.

59.    The next day Galindo woke up with his arm in pain and all bruised up from Screeal twisting it. Galindo was also suffering mental anguish as a result of this assault.

60.    Galindo was then required to provide another urine sample, which should be on record.

61.    Galindo reported both incidents – the September 26, 2017 incident involving Niemritz and Screeal in the stairwell and the November 1, 2017 incident involving Screeal in the SHU.

62.    At the beginning of November 2017, Lieutenant D. Swanson took pictures of Galindo's injuries and took down notes as Galindo described the assaults by Niemritz and Screeal.

63.    In November 2017, Galindo also explained what happened during the September 26, 2017 incident on the stairs to Lieutenants Gifford, M. Harris, Ridgeway, and Montgomery.

64.    Each of these Lieutenants took notes on what Galindo told them.

65. In February of 2018, Galindo submitted an Inmate Request to Lieutenant D. Swanson asking for an update on the above referenced assaults he had reported.

66. On February 27, 2018, Lieutenant D. Swanson responded in writing that the allegations had been forwarded to the appropriate authority for review.

67. Lieutenant D. Swanson referenced the photos and medical assessments of Galindo in this February 27, 2018 response.

68. On March 16, 2018, Galindo was transferred from FCI Seagoville to FMC Fort Worth.

69. Galindo was then transferred to FCI Texarkana.

70. On August 16, 2018, Warden Linda Geter at FCI Texarkana responded to another request by Galindo for an update on the investigation into the assaults.

71. Warden Geter stated in this August 16, 2018 response that, her staff confirmed there was an investigation at FCI Seagoville; however, there was no indication of the outcome of that investigation.

72. Galindo continued to make complaints and request updates on the investigation into Niemritz and Scereal.

73. However, BOP failed to perform an adequate investigation or discipline Niemritz and Scereal.

74. By failing to discipline Niemritz and Scereal, BOP ratified their conduct.

75. As a result of Niemritz and Scereal not being investigated or disciplined for their September 26, 2017 assault of Galindo, Scereal was not afraid to injure Galindo again on November 1, 2017 in a similar manner.

## V.
## CAUSES OF ACTION

### Count One

### FEDERAL TORT CLAIMS ACT
### Assault

76.   Galindo repeats and re-alleges each and every allegation contained in the above paragraph, incorporates those allegations in this Count, and further alleges as follows:

77.   BOP employee Niemritz, as described above, repeatedly slammed Galindo into a wall, and in doing so, intentionally, knowingly, or recklessly caused bodily injury to Galindo.

78.   BOP employee Niemritz, as described above, repeatedly slammed Galindo into a wall, and in doing so, intentionally or knowingly threatened Galindo with imminent bodily injury.

79.   BOP employee Niemritz, as described above, repeatedly slammed Galindo into a wall, and in doing so, intentionally or knowingly caused physical contact with Galindo when Niemritz knew or should reasonably have believed that Galindo would regard the contact as offensive or provocative.

80.   There was no justification for Niemritz's actions.

81.   These actions constitute the tort of assault under the laws of the state of Texas.

82.   The acts by Niemritz against Galindo which constituted assault were performed by Niemritz in the course and scope of his employment.

83.   BOP employee Niemritz was an investigative or law enforcement officer of the United States Government within the meaning of 28 U.S.C. § 2680.

84. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

85. Galindo requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

## Count Two

## FEDERAL TORT CLAIMS ACT
## Assault

86. Galindo repeats and re-alleges each and every allegation contained in the above paragraph, incorporates those allegations in this Count, and further alleges as follows:

87. BOP employee Niemritz, as described above, pulled Galindo's boxer shorts down and spread Galindo's buttocks, and in doing so, intentionally, knowingly, or recklessly caused bodily injury to Galindo.

88. BOP employee Niemritz, as described above, pulled Galindo's boxer shorts down and spread Galindo's buttocks, and in doing so, intentionally or knowingly threatened Galindo with imminent bodily injury.

89. BOP employee Niemritz, as described above, pulled Galindo's boxer shorts down and spread Galindo's buttocks, and in doing so, intentionally or knowingly caused physical contact with Galindo when Niemritz knew or should reasonably have believed that Galindo would regard the contact as offensive or provocative.

90. There was no justification for Niemritz's actions.

91. These actions constitute the tort of assault under the laws of the state of Texas.

92.     The acts by Niemritz against Galindo which constituted assault were performed by Niemritz in the course and scope of his employment.

93.     BOP employee Niemritz was an investigative or law enforcement officer of the United States Government within the meaning of 28 U.S.C. § 2680.

94.     Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

95.     Galindo requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

## Count Three

### FEDERAL TORT CLAIMS ACT
### Assault

96.     Galindo repeats and re-alleges each and every allegation contained in the above paragraph, incorporates those allegations in this Count, and further alleges as follows:

97.     BOP employee Scereal, as described above, twisted and squeezed Galindo's arm, and in doing so, intentionally, knowingly, or recklessly caused bodily injury to Galindo.

98.     BOP employee Scereal, as described above, twisted and squeezed Galindo's arm, and in doing so, intentionally or knowingly threatened Galindo with imminent bodily injury.

99.     BOP employee Scereal, as described above, twisted and squeezed Galindo's arm, and in doing so, intentionally or knowingly caused physical contact with Galindo when Niemritz knew or should reasonably have believed that Galindo would regard the contact as offensive or provocative.

100.    There was no justification for Scereal's actions.

101.    These actions constitute the tort of assault under the laws of the state of Texas.

102.    The acts by Scereal against Galindo which constituted assault were performed by Scereal in the course and scope of his employment.

103.    BOP employee Scereal was an investigative or law enforcement officer of the United States Government within the meaning of 28 U.S.C. § 2680.

104.    Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

105.    Galindo requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

### Count Four

### FEDERAL TORT CLAIMS ACT
### Battery

106.    Galindo repeats and re-alleges each and every allegation contained in the above paragraph, incorporates those allegations in this Count, and further alleges as follows:

107.    BOP employee Niemritz, as described above, repeatedly slammed Galindo into a wall, and in doing so, touched Galindo in an offensive manner.

108.    There was no justification for Niemritz's actions.

109.    These actions constitute the tort of battery under the laws of the state of Texas.

110.    The acts by Niemritz against Galindo which constituted battery were performed by Niemritz in the course and scope of his employment.

111.    BOP employee Niemritz was an investigative or law enforcement officer of the United States Government within the meaning of 28 U.S.C. § 2680.

112.    Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

113.    Galindo requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

### Count Five

### FEDERAL TORT CLAIMS ACT
### Battery

114.    Galindo repeats and re-alleges each and every allegation contained in the above paragraph, incorporates those allegations in this Count, and further alleges as follows:

115.    BOP employee Niemritz, as described above, pulled Galindo's boxer shorts down and spread Galindo's buttocks, and in doing so, touched Galindo in an offensive manner.

116.    BOP employee Niemritz, as described above, pulled Galindo's boxer shorts down and spread Galindo's buttocks, and in doing so, made contact with Galindo's clothing or an object closely identified with Galindo's body that is otherwise an offensive invasion of Galindo's person.

117.    There was no justification for Niemritz's actions.

118.    These actions constitute the tort of battery under the laws of the state of Texas.

119.    The acts by Niemritz against Galindo which constituted battery were performed by Niemritz in the course and scope of his employment.

120.  BOP employee Niemritz was an investigative or law enforcement officer of the United States Government within the meaning of 28 U.S.C. § 2680.

121.  Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

122.  Galindo requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

**Count Six**

**FEDERAL TORT CLAIMS ACT**
**Battery**

123.  Galindo repeats and re-alleges each and every allegation contained in the above paragraph, incorporates those allegations in this Count, and further alleges as follows:

124.  BOP employee Scereal, as described above, twisted and squeezed Galindo's arm, and in doing so, touched Galindo in an offensive manner.

125.  There was no justification for Scereal's actions.

126.  These actions constitute the tort of battery under the laws of the state of Texas.

127.  The acts by Scereal against Galindo which constituted battery were performed by Scereal in the course and scope of his employment.

128.  BOP employee Scereal was an investigative or law enforcement officer of the United States Government within the meaning of 28 U.S.C. § 2680.

129.  Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

130.   Galindo requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

### Count Seven

### FEDERAL TORT CLAIMS ACT
### Negligence

131.   Galindo repeats and re-alleges each and every allegation contained in the above paragraph, incorporates those allegations in this Count, and further alleges as follows:

132.   The United States of America owed a duty to Galindo as Galindo was under the United States of America's custody and control.

133.   The United States of America breached its duty, which breach was a direct and proximate cause and a substantial factor in bringing about Galindo's injuries and damages outlined above.

134.   In particular, through the conduct of its employees, Defendant United States of America violated its duty to Galindo by:

   a.   Negligently maintained cameras and areas in their facility, including the stairwell, which allowed Galindo to be injured by Niemritz and Scereal;

   b.   Negligently investigated the claims made by Galindo, which allowed Galindo to be injured by Niemritz and Scereal;

   c.   Negligently failed to discipline Niemritz and Scereal, which allowed Galindo to be injured by Lieutenants Niemritz and Scereal;

   d.   Negligently discarded evidence, specifically video footage, that would have substantiated the claims made by Galindo, which allowed Galindo to be injured again on November 1, 2017;

e.  Negligently supervised Niemritz and Scereal, which allowed them to injure Galindo.

f.  Negligently causing Galindo's bare feet to drag on the concrete because the footrest on the wheelchair was not put down for his feet to rest on as he was transferred on September 26, 2017;

g.  Negligently causing Galindo to make contact with the wall inside of the stairwell on September 26, 2017;

h.  Negligently removing Galindo's boxer shorts on September 26, 2017;

i.  Negligently spreading Galindo's buttocks on September 26, 2017;

j.  Negligently injuring Galindo's arm on November 1, 2017; and

k.  Negligently failing to ensure that the BOP's policies and procedures governing the use of force on inmates are followed by correctional staff.

135.  The harm suffered by Galindo as a result of Defendant's breach of its duty was foreseeable.

136.  The above described acts and omissions constitute the tort of negligence under the laws of the state of Texas.

137.  The above described acts which constituted negligence were performed by Defendant's employees in the course and scope of their employment.

138.  Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

139.  Galindo requests compensatory damages against the United States, plus the costs of this action and such other relief as this Court deems equitable and just.

## VI.
## RELIEF

140.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

141.    Galindo respectfully requests this Honorable Court grant him the following:

    a.  Compensatory damages as to all Counts;

    b.  Declaratory relief as to all Counts;

    c.  Reasonable attorneys' fees and costs; and,

    d.  Such other further relief as this Court deems just and appropriate.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant, for an amount in excess of the jurisdictional minimum of this court and for all other relief to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721
Colorado Bar No. 46582
NILES ILLICH
Texas Bar No. 24069969

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
niles@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF

16