## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **PATRICK GALINDO,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:20-cv-00837-L** |
| | § | |
| **THE UNITED STATES OF AMERICA,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant the United States of America's ("Defendant" or "Government") Motion to Dismiss and Brief in Support ("Motion") (Doc. 6), filed July 13, 2020. After careful consideration of the Motion, response, reply, record, and applicable law, the court **grants in part** and **denies in part** Defendant's Motion to Dismiss (Doc. 6).

### I.    Factual and Procedural Background

This action arises from two events that occurred while Plaintiff Patrick Galindo ("Plaintiff" or "Mr. Galindo") was incarcerated at the Federal Correctional Institution in Seagoville, Texas. Mr. Galindo's allegations involve two Bureau of Prisons ("BOP") staff members, Lieutenant Niemritz and Lieutenant Cerio[1] (collectively, "Lieutenants").

First, according to Mr. Galindo's Complaint (Doc. 1), on September 26, 2017, after finding him passed out in the bathroom wearing only a shirt and boxer shorts, Lieutenants Niemritz and Cerio put him in a wheelchair and transported him to the Lieutenant's Office. He alleges that, while being transported, his bare feet were dragging on the concrete along the way because the

---

[1] Neither party provides the first names of the Lieutenants. Also, in his Complaint (Doc. 1), Mr. Galindo incorrectly spells "Cerio" as "Scereal." Defendant, however, has corrected the spelling of his name, so the court will refer to him as Lt. Cerio. There is no dispute that the varied spellings refer to the same individual.

Lieutenants never put the footrest down on the wheelchair. Pl.'s Compl. ¶¶ 2, 13-20. Mr. Galindo alleges that the Lieutenants were upset with him because the headcount was incorrect by his passing out in the bathroom. The Lieutenants were instructed to take him to the Special Housing Unit ("SHU") and, while on the way, Mr. Galindo asserts that Lt. Niemritz was pulling up his boxer shorts while walking up a flight of stairs, which gave him a "wedgie." *Id.* ¶¶ 22, 24-27. Once at the top of the stairs, Lt. Niemritz allegedly asked Mr. Galindo if he had ever been to SHU, but Mr. Galindo did not respond because he "was scared." *Id.* ¶¶ 28-29. Lt. Niemritz then allegedly said, "Welcome to Seagoville," and slammed Mr. Galindo's head into the wall several times. *Id.* ¶¶ 30, 32.  He alleges that Lt. Niemritz was yelling for him not to move while "grinding" his head into the wall. *Id.* ¶ 33. He also alleges that he was restrained in handcuffs during this incident and did nothing to justify this behavior.  *Id.* ¶¶ 31, 36-37.

After this incident, Mr. Galindo alleges that, without his consent, Lt. Niemritz pulled his shorts down and spread his buttocks as a form of "degradation and intimidation," which caused him "physical pain and mental anguish." *Id.* ¶¶ 34-35. He alleges that Lt. Cerio served as "lookout" during this interaction. *Id.* ¶ 39.  He also alleges that Lieutenants Niemritz and Cerio then walked him down to his SHU cell without his boxers, exposing him to other SHU inmates. *Id.* ¶¶ 44-45. He was given new boxer shorts when he arrived at the SHU, but he did not receive clothes until the following day when he was instructed to give a urine sample. *Id.* ¶¶ 48-49. Again, Mr. Galindo alleges that he did nothing to justify this behavior. *Id.* ¶ 38.[2]

As a result of the Lieutenants' actions, Mr. Galindo alleges that his head was ringing, swollen, and knotted; and that he suffered a black eye. *Id.* ¶ 41. He makes no assertion that he

---

[2] The allegations discussed in this paragraph constitute what the Government refers to as the "visual search" portion of Mr. Galindo's assault, battery, and negligence claims under the Federal Tort Claims Act. Notably, Mr. Galindo does not separate the search aspects of his claims from the alleged physical harm.  The court, however, will address the visual search elements separately, as this is the basis of the Government's Motion to Dismiss under Rule 12(b)(1).

sought or received any medical attention at or near the time of the incident, or that he was seen by medical staff who identified any of the injuries that he mentioned in his Complaint. Mr. Galindo does allege, however, that he complained to Captain Crittle and Psychologist Carter on October 2, 2017—about a week after the incident allegedly occurred.[3] *Id.* ¶ 51. He asserts that they took notes of what allegedly transpired and told him that there were cameras in the areas at issue. *Id.* ¶ 52.

Second, Mr. Galindo's claims arise from events that allegedly occurred on November 1, 2017, when Mr. Galindo returned to SHU. *Id.* ¶ 54. Mr. Galindo states that, upon his arrival, Lt. Cerio twisted and squeezed his arm, and gave him a "wedgie," causing him pain, injury, and mental anguish. *Id.* ¶¶ 55, 58-59. He alleges he did nothing to justify these actions. *Id.* ¶ 56. He also contends that he woke up the next day bruised and in pain. *Id.* ¶ 59. Mr. Galindo alleges that he also reported this incident, and, at the beginning of November 2017, Lt. Swanson took pictures of his "injuries." *Id.* ¶ 62. Additionally, he alleges that, in November 2017, he informed four other lieutenants about what happened to him on September 26, 2017, and that they also took notes. *Id.* ¶ 63.

Mr. Galindo alleges that in February 2018, he asked Lt. Swanson for an update on the investigation into Lieutenants Niemritz and Cerio for their alleged conduct and was told that the allegations had been forwarded to the appropriate authority for review. *Id.* ¶¶ 66-67. On March 16, 2018, he was transferred to FMC Fort Worth and then FCI Texarkana.[4]  He alleges that on August 16, 2018, he asked the warden of FCI Texarkana for an update regarding his allegations at FCI Seagoville, and she informed him that an investigation had been completed. *Id.* ¶ 71.  He was

---

[3] Mr. Galindo also alleges that he spoke with Lt. Oterro in October 2017 regarding the incident.

[4] The Government states that Mr. Galindo has since been released and is no longer incarcerated.

**Memorandum Opinion and Order – Page 3**

not, however, given the outcome of that investigation, despite several requests for information. *Id.* ¶¶ 72.

Mr. Galindo filed his Complaint (Doc. 1) against the Government on April 10, 2020. He alleges claims for assault, battery, and negligence against the Government under the Federal Tort Claims Act ("FTCA"). Specifically, he brings claims based on allegations against Lieutenants Niemritz and Cerio for assault (Counts I-III) and battery (Counts IV-VI), for which he asserts the Government should be held liable under the FTCA. *Id.* ¶¶ 76-130. He also asserts that the Government is liable for negligence (Count VII), alleging that it violated its duty by: (1) negligently maintaining cameras; (2) negligently investigating his allegations; (3) negligently failing to discipline the Lieutenants; (4) negligently discarding evidence; (5) negligently supervising the Lieutenants; and (6) negligently failing to implement and follow BOP policies. *Id.* ¶ 134. He also brings negligent use of force claims with respect to Lieutenants Cerio and Niemritz's actions during the September and November 2017 incidents. *Id.* Mr. Galindo seeks compensatory damages, declaratory relief, and attorney's fees for his injuries. *Id.* ¶¶ 139-41.

In addition to the factual allegations discussed above, Mr. Galindo alleges that Lieutenants Cerio and Niemritz, as BOP employees, are "employees of the Government" for the purposes of the FTCA. *Id.* ¶¶ 83, 93; *see also* 28 U.S.C. §§ 2671-2680. Mr. Galindo filed notice of his claim with the South-Central Regional Office of the BOP, and notice was acknowledged on September 25, 2019. *Id.* ¶¶ 8-9. Accordingly, Mr. Galindo alleges that he has exhausted his federal tort claim administrative remedies, as no further response had been received from the Office of the BOP when he filed his Complaint, and the six months for the BOP to respond to Plaintiff's notice has passed. 28 C.F.R. § 14.2.

The Government filed its Motion to Dismiss (Doc. 6) with respect to all counts on July 13, 2020. Mr. Galindo filed his Response to the Motion to Dismiss (Doc. 8) on July 31, 2020, and the Government filed its Reply  (Doc. 10) on August 14, 2020.

## II.     Legal Standards

### A.     Rule 12(b)(1) – Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties.  28 U.S.C. §§ 1331, 1332.  Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction.  *Kokkonen*, 511 U.S. at 377 (citations omitted).  "[S]ubject-matter jurisdiction cannot be created by waiver or consent."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case.  *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their

own initiative even at the highest level."); *McDonald v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue. *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

B.      Rule 12(b)(6) – Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The

"[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).  Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record."'  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid

claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III.    Analysis

The Government contends that the discretionary function exception to the FTCA bars Plaintiff's assault, battery, and negligence claims with respect to the visual search performed by Lt. Niemritz on September 26, 2017. Accordingly, the Government moves to dismiss Counts II, V, and portions of Count VII under Rule 12(b)(1) for lack of subject matter jurisdiction. The Government concedes that the discretionary function exception does not bar Mr. Galindo's claims against Lieutenants Niemritz and Cerio for assault, battery, and negligent use of force related to

other alleged physical harm and injuries. It contends, however, that Counts I, III, IV, VI, and the remaining allegations under Count VII should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

     A.   <u>Government's Motion to Dismiss Mr. Galindo's Claims for Assault, Battery, and Negligence (Counts II, V, and VII) Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction</u>

Mr. Galindo alleges that Lt. Niemritz's actions during the visual search constitute assault and battery under the FTCA.[5] He also alleges that the Government was negligent with respect to the visual search by failing to: (1) maintain cameras adequately; (2) investigate his allegations; and (3) discipline Lieutenants Cerio and Niemritz for their actions, among other things. *See* Pl.'s Compl. 14-15. The Government asserts that Mr. Galindo's claims for assault, battery, and negligence with respect to the visual search are barred by the discretionary function exception to the FTCA.

The FTCA provides a limited waiver of sovereign immunity and permits suits against the United States for claims arising under state tort law for money damages. 28 U.S.C. § 2674 (waiving sovereign immunity to make the government liable "in the same manner and to the same extent as a private individual under like circumstances"). The FTCA gives a district court jurisdiction over monetary claims against the Government for the negligent or wrongful acts of its employees, "whe[n] the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

---

[5] Notably, Mr. Galindo opposes the Government's characterization of the alleged conduct as a visual search. The court, however, will address these allegations separately, as they are the basis for the Government's motion to dismiss under Rule 12(b)(1).

**Memorandum Opinion and Order – Page 9**

The Government's liability under the FTCA is subject to the various exceptions listed in 28 U.S.C. § 2680, including the discretionary function exception. *United States v. Gaubert,* 499 U.S. 315, 322 (1991). 28 U.S.C. § 2680(a) states:

> The provisions of this chapter and section 1346(b) of this title shall not apply to [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

This provision "withdraws the FTCA's waiver of sovereign immunity in situations in which, although a Government employee's actions may have been actionable under state tort law, those actions were required by, or were within the discretion committed to, that employee under federal statute, regulation, or policy." *Spotts v. United States,* 613 F.3d 559, 566 (5th Cir. 2010).  The purpose of this exception is to "prevent judicial second-guessing of legislative and administrative decisions." *Gaubert*, 499 U.S. at 323 (citations and internal quotations omitted).  Thus, "if a regulation allows the employee discretion, the very existence of a regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations."  *Id.* at 324.

The Fifth Circuit applies a two-part test, commonly known as the *Gaubert* Test, to determine whether the discretionary function exception applies. Specifically, the court must assess: (1) whether the challenged conduct was "a matter of choice for the acting employee"; and (2) if so, whether "the judgment [was] of the kind that the discretionary function exception was designed to shield."  *Gonzalez v. United States*, 851 F.3d 538, 544 (5th Cir. 2017) (quoting *Berkovitz by Berkovitz*, 486 U.S. 531, 536 (1988)) (internal quotations omitted). With respect to the first prong, if an "established policy as expressed or implied by statute, regulation, or agency guidelines,

allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. *Gaubert*, 499 U.S. at 324.  To survive a motion to dismiss, a plaintiff's complaint "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory scheme." *Id.* at 324-25.

 With respect to the second prong, the court must "consider whether the actions taken are susceptible to policy analysis," but need not consider whether the acting employee "in fact engaged in policy analysis." *Gonzalez*, 851 F.3d at 544 (quoting *Gibson*, 809 F.3d 807, 812 (5th Cir. 2016) and *Spotts*, 613 F.3d at 572)) (internal citations and quotations omitted). If both prongs of the *Gaubert* Test are met, the discretionary function exception bars the plaintiff's claim, and the claim must be dismissed for lack of subject matter jurisdiction.

 As previously stated, the Government asserts that Mr. Galindo's claims related to the visual search should be dismissed for lack of subject matter jurisdiction because these claims are barred by the discretionary function exception. Its position is that this exception bars Mr. Galindo's claims as to how Lt. Niemritz visually searched Mr. Galindo and escorted him to his cell, by spreading his buttocks and walking him to his cell without his boxer shorts. Mr. Galindo does not dispute that the BOP has a right to search inmates, but he contends that the right to conduct a visual search is "fettered" and that the discretionary function exception should not apply, because 28 U.S.C. § 552.11(c)(1) states that a "visual search shall be made in a manner designed to assure as much privacy to the inmate as practicable."  Doc. 9 at 12. He further asserts that Lt. Niemritz's actions do not constitute a search but a use of excessive force.  Even if his actions constitute a search, Mr. Galindo contends that his actions violated BOP policy, as shown by his allegations that the

Lieutenants "paraded" him around without boxer shorts for the purpose of humiliation. For these reasons, Mr. Galindo asserts that the Government's motion to dismiss should be denied.

In considering whether Lieutenants Niemritz and Cerio acted within the discretion of a BOP policy, the court must consider whether the Government meets both prongs of the *Gaubert* Test. With respect to the first prong, the court determines that the visual search policy involved an officer's discretion in determining how the searches are conducted. BOP officers can conduct a visual inspection of *all* body surfaces and body cavities "where there is reasonable belief that contraband may be concealed on the person, or a good opportunity for concealment has occurred," such as placement in the SHU. 28 C.F.R. § 552.11. The search must be made to "assure as much privacy to the inmate as practicable." 28 C.F.R. § 552.11(c)(1).

The court agrees with Mr. Galindo that officers should consider an inmate's personal privacy when conducting a search, but the manner in which the search should be conducted is not specifically addressed by the policy, leaving the BOP officer with "room for choice" when conducting the search. In other words, an officer cannot and is not mandatorily required by any regulation or policy to ensure a specific level of privacy, and Mr. Galindo does not cite to any such policy, statute, or regulation.[6] Instead, the policy cited by the Government and Mr. Galindo requires only that the officer, in that officer's discretion, assure as much privacy as the officer deems practicable. While Mr. Galindo may disagree with the amount of privacy afforded by Lt. Niemritz, that does not mean the Lieutenant violated a mandatory policy. Moreover, Mr. Galindo only sets forth a conclusory and speculative allegation that the Lieutenants "paraded" him around for the purpose of humiliating him. Without more, however, the court cannot reasonably determine

---

[6] Notably, in his Response to the Government's Motion to Dismiss, Mr. Galindo heavily focuses on the BOP's policy for use of force (*see* Pl.'s Resp. 6-10), which the court determines relates more to the alleged physical-harm-inflicted argument than the alleged search.

that the Lieutenants acted beyond the discretion afforded to them by the BOP policy for visual searches. The court, therefore, determines that the policy regarding the visual search allows room for discretion, and, thus, the Government has satisfied the first prong of the *Gaubert* Test.

As the Government has met its burden with respect to the first prong, the court must now determine whether it has demonstrated that the judgment allowed with visual searches is of the kind that the exception was designed to shield. *Gonzalez*, 851 F.3d at 544. The Government asserts that "[t]he policy that allows officers to conduct visual searches of body cavities is designed to shield officers from the types of assault and battery claims asserted here – where inmates contend that such search violated an inmate's right to privacy or caused embarrassment, humiliation, or discomfort." Def.'s Mot. 7 (citing 28 C.F.R. § 552.11(c)(1)). In response, Mr. Galindo argues that the exception does not apply because the Lieutenants violated BOP policy, and he relies on *Ashford v. United States*, 511 F.3d 501 (5th Cir. 2007), to support his position. The facts of *Ashford*, however, are distinguishable from those before the court.

In *Ashford*, the inmate had been attacked by another inmate named Smith. After being transferred to another facility, Ashford was concerned that he would be attacked by Smith again. *Ashford*, 511 F.3d at 503. Despite raising his safety concerns to officers, Ashford was placed in the general population of the prison and violently attacked by other inmates at Smith's direction. *Id*. at 504. The court in *Ashford* found that the discretionary function exception did not apply to the officer's decision to place the inmate in the general population because prison policy *required* that, if an inmate raised concerns about his safety, the BOP must place him in administrative segregation or SHU until it conducted an investigation into the inmate's concerns. *Id*. at 503, 505.

As the Government highlights, in contrast to *Ashford*, where policy mandated that an inmate be housed in SHU pending an investigation, Mr. Galindo does not point to any specific

mandatory policy that Lt. Niemritz violated when he conducted a visual search. Moreover, he fails to address sufficiently whether the visual search policy was meant to shield officers from claims, such as his, that are based on alleged humiliation and degradation. Without more, the court determines that the judgment exercised by Lt. Niemritz when conducting the visual search is the kind the discretionary function exception was specifically designed to shield because to find otherwise would second-guess the officer's authority under BOP policy to conduct such searches within the officer's discretion. The Government, therefore, has also met its burden with respect to the second prong of the *Gaubert* Test.

As the Government has satisfied its burden under *Gaubert*, the court determines that the discretionary function exception bars Mr. Galindo's claims regarding how Lt. Niemritz visually searched him. For these reasons, the court **grants** the Government's Motion to Dismiss (Doc. 6) with respect to Mr. Galindo's claim of alleged assault, battery, and negligence[7] related to the visual search (Counts II, V, and VII), as they are barred by the discretionary function exception, and, thus, the court lacks jurisdiction to entertain these claims.

As part of his negligence claim, Mr. Galindo also alleged that the Government violated its duty to him by: (1) "[n]egligently maintain[ing] cameras and areas in their facility"; (2) "[n]egligently investigat[ing] the claims made by [him]"; (3) "[n]egligently discard[ing] evidence, specifically video footage"; and (4) "[n]egligently supervis[ing] Niemritz and Scereal [sic]." The Government, however, asserts that these claims, in addition to Mr. Galindo's allegation that it negligently failed to discipline the Lieutenants, is barred by the discretionary function exception

---

[7] With respect to Mr. Galindo's negligence claim related to the visual search, the court's ruling on this issue applies to Mr. Galindo's allegations that the Government: (1) "Negligently remov[ed] Galindo's boxer shorts on September 26, 2017"; and (2) "Negligently spread Galindo's buttocks on September 26, 2017." Pl.'s Compl. ¶ 134.

of the FTCA, and Mr. Galindo concedes this argument (*see* Pl.'s Resp. 5 n.2).[8] Thus, the court determines these claims are no longer at issue and will dismiss these claims with prejudice.

B.  <u>Government's Motion to Dismiss Mr. Galindo's Additional Claims for Assault, Battery, and Negligent Use of Force (Counts I, III, IV, VI, and VII) under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted</u>

Mr. Galindo alleges that, on September 26, 2017, Lt. Niemritz slammed and grinded his head against the wall, and that he and Lt. Cerio caused his feet to drag along the concrete when they were transporting him.  He also alleges that, on November 1, 2017, Lt. Cerio twisted and squeezed his arm, and gave him a "wedgie" without justification.  According to Mr. Galindo, these actions constitute assault, battery, and negligent use of force under the FTCA. The Government, however, alleges that these allegations are conclusory and speculative, but it acknowledges that the court has jurisdiction over these claims.

1.  *Mr. Galindo's claims for assault and battery with respect to Lieutenants Niemritz and Cerio (Counts I, III, IV, and VI)*

The Government waives sovereign immunity for claims involving assault or battery against law enforcement officers acting within the scope of his or her employment. 28 U.S.C. § 2680(h); *Joiner v. United States*, 955 F.3d 399, 406 (5th Cir. 2020). The parties do not dispute that Lieutenants Niemritz and Cerio were employees of the BOP at the time the 2017 incidents occurred. Thus, in considering whether Mr. Galindo's assault and battery claims with respect to allegations of physical abuse by Lieutenants Niemritz and Cerio overcome a motion to dismiss, the court must consider whether he has sufficiently set forth allegations to support the elements of his claims under Texas law.[9]

---

[8] Mr. Galindo does not specifically concede that his claim with respect to the Government's failure to discipline is barred by the exception.  The court determines, however, that the failure to discipline is merely an element of failure to supervise.

[9] The court will look to Texas substantive law because the events at issue took place in Texas, and, thus, as required by the FTCA, Texas law controls. 28 U.S.C. § 1346(b)(1).

For the Government to be held liable for assault, Mr. Galindo must set forth allegations showing that Lieutenants Niemritz and Cerio:

> (1) intentionally, knowingly, or recklessly cause[d] bodily injury to [him] [];
>
> (2) intentionally or knowingly threaten[ed] [him] with imminent bodily injury []; or
>
> (3) intentionally or knowingly cause[d] physical contact with [him] when [they] kn[ew] or should [have] reasonably believe[d] that the other w[ould] regard the contact as offensive or provocative.

Tex. Pen. Code § 22.01(a). Although this definition of assault comes from the Texas Penal Code, it equally applies in civil cases. *See Walmart Stores, Inc. v. Odem*, 929 S.W.2d 513, 522 (Tex. App.—San Antonio 1996, *writ denied*); *Childers v. A.S.*, 909 S.W.2d 282, 292 (Tex. App.—Fort Worth 1995, *writ denied*). With respect to correctional officers, however, Section 9.53 of the Texas Penal Code provides a "civil privilege defense," which provides:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

If an officer is acting within this privilege, the officer's actions do not constitute tortious assault under Texas law.

In alleging a battery claim, the Supreme Court of Texas provides:

> If an act is done with the intention of inflicting upon another an offensive but not a harmful bodily contact to the other, the actor is liable to the other for a battery . . . although the act was not done with the intention of bringing about the resulting bodily harm.

*City of Watauga v. Gordon*, 434 S.W.3d 586, 592-93 (Tex. 2014) (quoting Restatement (Second) of Torts § 16 (1965)).  Thus, it is enough that the defendant intended to cause "offensive" bodily

---

contact. *Id.* at 593 (citations and internal quotations omitted). Mr. Galindo's assault and battery claims are both based on the same allegations against Lieutenants Niemritz and Cerio. To survive dismissal of these claims under Rule 12(b)(6), Mr. Galindo must set forth sufficient allegations that the use of force was not necessary to maintain safety and security but was instead malicious, in bad faith, or excessive. *Scott v. Gallagher,* 209 S.W. 3d 262, 66-67 (Tex. App.—Houston [1st Dist.] 2006).

With respect to Lt. Niemritz, Mr. Galindo alleges he "slammed his head into the wall several times." He also alleges that Lt. Niemritz was "grinding" his head against the wall, yelling at him "don't move."  The Government contends that Mr. Galindo's allegations do not suggest that such aggressive conduct as "slamming" or "grinding" occurred. It further asserts that the facts, as pled, are a far cry from an allegation of unlawful torture, sexual harassment, mutilation, or other violation of a prisoner's civil rights. Def.'s Mot. 9 (citation omitted). Additionally, it contends that Mr. Galindo has not set forth allegations that any alleged use of force by Lt. Niemritz was excessive, unjustified, or used maliciously or in bad faith.  The court disagrees.

On numerous occasions in his Complaint, Mr. Galindo alleges that he was restrained in handcuffs when Lt. Niemritz allegedly slammed his head into the wall without provocation, and despite his allegations that he "was compliant, not violating any rules, not threatening anyone, and not resisting[.]"  Pl.'s Compl. ¶¶ 31, 36-37.  The court can reasonably infer from these allegations, accepted as true, that Lt. Niemritz engaged in unjustified or excessive use of force.  Moreover, these allegations demonstrate that, at minimum, Mr. Galindo found Lt. Niemritz's physical contact offensive and that he suffered alleged injuries as a result.  The Government counters Mr. Galindo's allegations of unjustified force by asserting that his allegation that Lt. Niemritz was yelling, "Don't move," suggests that his actions were justified to gain control over Mr. Galindo.  This allegation

alone is not fatal to Mr. Galindo's claim as the Government fails to provide any reasonable basis at the Rule 12(b)(6) stage to dismiss Mr. Galindo's allegations that any force was unjustified and excessive, especially accepting as true Mr. Galindo's multiple allegations that he was restrained and handcuffed when Lt. Niemritz allegedly slammed his head into the wall.

The Government also highlights that Mr. Galindo did not report any alleged injuries that resulted from Lt. Niemritz's actions until after the occurrence and further asserts that Mr. Galindo's allegation that Lt. Niemritz was upset about the headcount being wrong is speculative. In support of its assertion, the Government contends that he makes no allegations that: (1) "he has personal knowledge of Lt. Niemritz's feelings or beliefs"; or (2) "explain why Lt. Niemritz would be upset if the headcount was incorrect that would in turn cause him to act in bad faith or maliciously[.]" Def.'s Mot. 8 (footnotes omitted).  These deficiencies, however, also do not support dismissal of Mr. Galindo's claims at this stage of the proceedings, as he has set forth sufficient allegations to support his claims for assault and battery against Lt. Niemritz. At this stage, a plaintiff is not required to prove his claim or raise a genuine dispute of material fact. At the pleading stage, a court only tests the sufficiency of the pleadings. Thus, the Government's quarrel with any additional allegations can be addressed at a later stage of the proceedings. For these reasons, Mr. Galindo's allegations regarding Lt. Niemritz's actions and his resulting injuries are sufficient to overcome dismissal on his claims for assault and battery with respect to Lt. Niemritz.

Similarly, with respect to Lt. Cerio, the court determines that Mr. Galindo also has set forth sufficient allegations to show that the Government may be liable for assault and battery with respect to Lt. Cerio's actions on November 2, 2017. Like its assertions with respect to Lt. Niemritz, the Government contends that Mr. Galindo's claims should fail because he: (1) did not explain why Lt. Cerio would twist his arm without reason or that such force was not reasonable under the

circumstances; and (2) did not seek medical attention near the time of the incident. Again, the Government overlooks that Mr. Galindo has set forth allegations that Lt. Cerio twisted his arm and caused him pain even though he "was compliant, not violating any rules, not threatening anyone, and not resisting." Pl.'s Compl. ¶ 57. Moreover, as previously stated, a delay in reporting an alleged injury is not fatal to Mr. Galindo's claim at this stage. Thus, accepting these allegations as true, the Government is also not entitled to dismissal of Mr. Galindo's assault and battery claims with respect to Lt. Cerio.

For the reasons herein discussed, the court **denies** the Government's Motion to Dismiss (Doc. 6), to the extent it seeks dismissal of Mr. Galindo's claims for assault and battery against Lieutenants Niemritz and Cerio under Rule 12(b)(6). The court now turns to Mr. Galindo's claims for negligent use of force.

2. *Mr. Galindo's claims for negligent use of force with respect to Lieutenants Niemritz and Cerio (Count VII)*

After consideration of Mr. Galindo's remaining claims for negligent use of force, the court determines that his claims of negligence are merely an attempt to circumvent dismissal of his claims under the FTCA and attempt a second method of recovery. Specifically, Mr. Galindo alleges that the Government: (1) "[n]egligently caus[ed] Galindo's bare feet to drag on the concrete because the footrest on the wheelchair was not put down for his feet to rest on as he was transferred on September 26, 2017"; (2) "[n]egligently caus[ed] Galindo to make contact with the wall inside of the stairwell on September 26, 2017; and (3) "[n]egligently injur[ed] Galindo's arm on November 1, 2017." Pl.'s Compl. ¶ 134. Mr. Galindo, however, fails to set forth allegations as to how the Government was negligent in allowing conduct that he alleged was intentional. Without more, the court cannot reasonably infer that the Government was negligent based on these allegations. For these reasons, the court determines that Mr. Galindo has failed to set forth

sufficient allegations to support his remaining claims for negligent use of force.  The court, therefore, **grants** the Government's Motion to Dismiss with respect to Mr. Galindo's negligent use of force claims.[10]

## IV.    Amendment of Pleadings

In response to the Government's Motion, Mr. Galindo did not request to amend his pleadings in the event the court determined that he failed to state a claim.  The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation.  This provision, however, applies only when a party "expressly request[s] to amend." *United States, ex. Rel. Jamison v. Del-Jen, Inc.*, 747 F. App'x 216, 221 (5th Cir. 2018) (citation omitted). Mr. Galindo did not request to amend his Complaint with respect to his claims for assault and battery with respect to the visual search and claims for negligent use of force, as herein defined. Further, "[a] party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals." *Id.* (citation omitted). Accordingly, these claims will be dismissed with prejudice.

## V.    Conclusion

For the reasons herein stated, the court **grants** the Government's Motion to Dismiss (Doc. 6), to the extent it seeks dismissal under Rule 12(b)(1) with respect to Mr. Galindo's claims for assault, battery, and negligence (Counts II, V, and VII, respectively), as they relate to the visual search conducted by Lieutenants Niemritz and Cerio; and with respect to his additional negligence claims unrelated to the visual search or alleged physical harm as articulated in Section III(A) of this opinion. As these claims are barred by the discretionary function exception, the court lacks subject matter jurisdiction to entertain them and, thus, **dismisses with prejudice** Mr. Galindo's

---

[10] Specifically, the court grants the motion to dismiss with respect to these claims based on the allegations in subparts (f), (g), and (i) of Plaintiff's Original Complaint.

assault, battery, and negligence claims related to the visual search (Counts II, V, and VII), and the negligence claims unrelated to the visual search or alleged physical harm (Count VII).[11]

The court also **grants in part and denies in part** the Government's Motion to Dismiss (Doc. 6), to the extent it seeks dismissal under Rule 12(b)(6) with respect to Mr. Galindo's claims for assault, battery, and negligent use of force (Counts I, III, IV, VI, and VII), as they relate to the physical contact by Lieutenants Niemritz and Cerio on September 26, 2017, and November 1, 2017. Specifically, the court **grants** the Government's Motion based on Rule 12(b)(6), to the extent it seeks to dismiss Mr. Galindo's negligent use of force claims under Count VII and **dismisses with prejudice** this claim. The court **denies**, however, the Government's 12(b)(6) motion for dismissal to the extent it seeks to dismiss Mr. Galindo's assault and battery claims (Counts I, III, IV, and VI) related to the physical harm alleged.

**It is so ordered** this 29th day of January, 2021.

Sam A. Lindsay
United States District Judge

---

[11] Ordinarily, when a court lacks subject matter jurisdiction, the dismissal should be without prejudice; however, "with prejudice" is appropriate here because there is no other forum in which Plaintiff can bring these claims.